**NOT FOR PUBLICATION [92,93,97,100]**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

ORLANDO HARE,                          :

                         Plaintiff,          :

                 v.                     :

DETECTIVE RYAN WOODHEAD, et al.,       :
                   Defendants.

_____

                         Civil Action No. 08-5894 (FLW)

                         **O P I N I O N**

**WOLFSON, District Judge**

      Presently before the Court is a Motion for Summary Judgment by Plaintiff, pro se, Orlando Hare ("Plaintiff" or "Hare"), against Defendants Ryan Woodhead ("Woodhead") and Frederick Bender ("Bender"), as well as individual Motions for Summary Judgment by Defendant Roberto O. Reyes ("Reyes"), Woodhead and Bender (collectively referred to as "Defendants").  The instant motions arise out of Plaintiff's complaint alleging violations of his constitutional rights and requesting relief under 42 U.S.C. § 1983.  For the reasons that follow, the Court grants summary judgment in favor of Defendants Woodhead and Bender and denies summary judgment to Defendant Reyes and Plaintiff.

## I.      BACKGROUND AND PROCEDURAL HISTORY

      In the late afternoon on January 31, 2007, Defendants Bender and Woodhead were beginning their shift with the Trenton Anti-Crime Unit ("TAC") in Trenton, New Jersey.  The TAC unit is a specialized unit that deals with "street-level crimes and violations of city ordinances."  Wilson Cert., ¶ 6, Ex. D, Trial Transcript October 16, 2008 ("Oct. 16 Tr.")  42:10-

13.   At that time, Bender and Woodhead were provided with confidential information from a fellow  police officer that three black men with guns were driving a silver sports utility vehicle in and around Trenton with the intention of shooting rival gang members.  Wilson Cert., ¶ 8, Ex. F. During their shift, Bender and Woodhead were driving an unmarked police vehicle.  Oct. 16 Tr. 43:11-17.

At or around 1:00 a.m. on February 1, 2007, Bender and Woodhead observed Plaintiff driving a silver Nissan Xterra.  Defendants Bender and Woodhead contend that they noticed Plaintiff's vehicle turning from Greenwood Avenue to Chestnut Street without using a turn signal.[1]  As a result, Bender and Woodhead activated their lights and sirens to initiate a motor vehicle stop.  Plaintiff, however, failed to stop his car and continued driving.  Bender and Woodhead issued a radio dispatch for additional units to help them pursue Plaintiff and several marked police vehicles joined the chase.  Wilson Cert., ¶ 11, Ex. I, State v. Hare, 2010 WL 2471737, at *1 (N.J. Super. App. Div. June 18, 2010).

After driving for approximately 20 minutes, with marked and unmarked police vehicles involved in the chase, Plaintiff eventually stopped his vehicle at the corner of Burton Avenue and Phoenix Alley.   Wilson Cert., Ex. G, ¶ 9, Plaintiff's Deposition Testimony ("Pl's Dep.")  83-85. Indeed, at his deposition, Plaintiff testified that he would not pull over for an unmarked police car,  Id. 81:17-25, and that he only decided to stop when he determined that there were no unmarked police vehicles and only marked vehicles in pursuit.  Id. 83.  Plaintiff pulled over to the side of the road, exited his vehicle with his hands up and ran from his vehicle.  Id. 90:18-20;

---

[1]At his deposition, Plaintiff testified that there was no "motor vehicle reason to stop" him. Wilson Cert., Ex. G, Plaintiff's Deposition Testimony ("Pl's Dep.") 88:18-19.

2

100:7-18.  Subsequently, Defendant Reyes, a uniformed police officer who was in one of the marked vehicles, tackled Plaintiff and brought him to the ground.  Id. 90:18-91:1.  Plaintiff testified that after Defendant Reyes put the right handcuff on him, but before his left hand was placed in cuffs, Officer Reyes hit him once in the face and approximately eight to ten times on his left torso.  Id. 106-109.   Once both his hands were cuffed, Plaintiff does not allege that he received any additional blows by Officer Reyes or any other officer.  Id. 110.  As a result, Plaintiff contends that he suffered a cut above his left eye that did not require medical treatment or stitches and slight bruising on his left side.  Id. 112.  Following this incident, Plaintiff was taken to Trenton police headquarters to be processed; however, Plaintiff testified that he did not have any complaints of pain at that time, that he did not think the injuries were "serious to warrant taking to the hospital," and that he never complained to anyone or asked for medical treatment.  Id. 119, 122.  In addition, Plaintiff signed a form indicating that he did not have any "Present Complaints."  Id. 120.

Plaintiff was charged with eluding, driving without a license, driving without a seatbelt, and failure to signal.  Plaintiff was eventually convicted of second-degree eluding.  Plaintiff appealed his conviction and the New Jersey Superior Court, Appellate Division, upheld both Plaintiff's  conviction and sentence.  State v. Hare, 2010 WL 2471737, at *3-5.

On December 2, 2008, Plaintiff filed a Complaint against Defendants alleging that they violated his constitutional rights in violation of 42 U.S.C. § 1983.  Specifically, the Court understands Plaintiff to allege that Detectives Woodhead and Bender attempted to stop him without probable cause and because of his race in violation of his Fourth and Fourteenth

3

Amendment rights.   In addition, the Court understands Plaintiff to allege that Defendant Reyes used excessive force against him.

On September 30, 2010, Plaintiff filed a motion for summary judgment against defendants Woodhead and Bender.  On October 1, 2010, Defendant Reyes filed a motion for summary judgment.  On October 8, 2010, Defendant Woodhead filed a cross motion for summary judgment  and on October 12, 2010, Defendant Bender filed a cross motion for summary judgment.

II.      **DISCUSSION**

A.  **Summary Judgment Standard**

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law."  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(c).  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).  For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law."  Kaucher, 455 F.3d at 423.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

4

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'"  Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the province of the fact finder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

**B.**     **Defendants' Motions for Summary Judgment**

Defendants argue that Plaintiff has failed to state a cause of action under 42 U.S.C. §

1983 which provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory, ... subjects, or causes to be subjected, any citizen
> of the United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress.

42 U.S.C. § 1983.  Importantly, section 1983 in and of itself, is not a source of substantive rights;

rather, the statute provides "a method for vindicating federal rights elsewhere conferred."

Graham v. Connor, 490 U.S. 386, 393-94 (1989)(quotations omitted).  To recover under 42

U.S.C. § 1983, a plaintiff must show that: (1) a person deprived him or caused him to be

deprived of a right secured by the constitution or laws of the United States; and (2) the

deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988);

Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).


**1.**     **Woodhead's and Bender's Motions for Summary Judgment**

As discussed above, in his Complaint, Plaintiff contends that Defendants Woodhead and

Bender attempted to stop him without probable cause and solely based on his race.  Thus,

Plaintiff argues that his actions in eluding arrest and leading the police on a twenty minute car

chase were justified and, moreover, that he is entitled to compensatory and punitive damages for

the alleged constitutional violations caused by Woodhead and Bender's attempted stop.  Pl's

Compl. at 7.  In other words, Plaintiff argues that but for the alleged racial profiling, Defendants

6

Woodhead and Bender would not have stopped  him, and, therefore, that he would not have been convicted of eluding arrest.  In their individual motions for summary judgment, Defendants Woodhead and Bender argue that Plaintiff is not entitled to recovery pursuant to Heck v. Humphrey, 512 U.S. 477 (1994).  In addition, Defendants argue that the defense of qualified immunity applies to their actions.  The Court agrees.

     a. Qualified Immunity

     In the instant matter, Defendants Woodhead and Bender argue that they are protected from suit by the doctrine of qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known'."  Bayer v. Monroe County Children & Youth Servs., 577 F.3d 186, 191 (3d Cir. 2009) (quoting Pearson v. Callahan, 555 U.S. 223, ---, 129 S. Ct. 808, 815 (2009)).  More simply stated, qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation ...."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  This defense strikes a balance, shielding those officers from liability that mistakenly, but reasonably, believed their actions were lawful while permitting a plaintiff to recover against those defendants that knowingly violated the plaintiff's rights.  See Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007).

     In assessing whether qualified immunity applies, courts consider two inquiries: (i) whether the facts alleged, when viewed in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right; and (ii) whether the right that was [allegedly] violated was clearly established, i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  See Saucier v. Katz, 533

7

U.S. 194, 201-02 (2001).  The Supreme Court made clear in <u>Pearson</u>, that courts have discretion

to determine which of the two prongs of the qualified immunity test to address first.  <u>See</u>

<u>Montanez v. Thompson</u>, No. 05-4430, 2010 WL 1610612, *5 (3d Cir. Apr. 22, 2010) (noting the

elimination of "the requirement that <u>Saucier</u>'s two steps be analyzed in sequential order").

However, "[i]f the answer to either question is 'no,' the analysis may end there." <u>Matos v. City of</u>

<u>Camden</u>, No. 06-205 (NLH), 2009 WL 737101, * 3 (D.N.J. Mar. 18, 2009) (citing <u>Pearson</u>, 129

S. Ct. at 823).

 Thus, in deciding if Woodhead and Bender are entitled to a defense of qualified

immunity, this Court must first consider whether Defendants' conduct violated any of Plaintiff's

Constitutional rights.  <u>Saucier</u>, 533 U.S. at 201-02.  Here, Plaintiff appears to contend that

Defendants stopped him in violation of his constitutional rights and, therefore, that he is entitled

to recover under section 1983.  Specifically, Plaintiff asserts that summary judgment is

inappropriate because Defendants lacked probable cause to pursue his vehicle and that he  was

signaled to pull over based on racial profiling.  Thus, the Court understands Plaintiff to allege a

Fourth Amendment claim for false arrest, or, in the alternative, an Equal Protection claim under

the Fifth and Fourteenth Amendments.

 To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements:

(1) that there was an arrest; and (2) that the arrest was made without probable cause.  <u>See</u>

<u>Dowling v. City of Philadelphia</u>, 855 F.2d 136, 141 (3d Cir. 1988).  To establish the absence of

probable cause, a plaintiff must show "that at the time when the defendant put the proceedings in

motion the circumstances were such as not to warrant an ordinary prudent individual in believing

that an offense had been committed." <u>Lind v. Schmid</u>, 67 N.J. 255, 262 (1975).  "Probable cause

... requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. State of Ohio, 379 U.S. 89, 91 (1964)); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir. 1997).

Alternatively, construing this claim as an Equal Protection claim under the Fifth and Fourteenth Amendments, Plaintiff would have to show that the actions of Woodhead and Bender: (1) had a discriminatory effect and; (2) were motivated by a discriminatory purpose. See Washington v. Davis, 426 U.S. 229, 239-42 (1976); Bradley v. United States, 299 F.3d 197, 205 (3d Cir. 2002). "To show discriminatory effect, Plaintiff must demonstrate that [he] is a member of a protected class and that similarly situated members of an unprotected class were treated dissimilarly. Plaintiff must then demonstrate discriminatory purpose, which requires a showing that [defendants] targeted [him] because of race." Hurn v. United States, 221 F. Supp.2d 493, 500 (D.N.J. 2002)(citations omitted).

In the instant matter, the undisputed facts demonstrate that Plaintiff has failed to establish that Woodhead and Bender violated his rights under either the Fourth, Fifth or Fourteenth Amendments. Initially, with regard to his equal protection claim, the Court notes that aside from the conclusory allegations that Defendants used "race and/or bias in initiating an unlawful seizure," Compl. ¶ 6, Plaintiff has provided no facts to substantiate his claim of racial profiling. Indeed, at this juncture, following the close of discovery, Plaintiff has not provided a shred of evidence to support his claim that Woodhead and Bender pulled him over on the basis of race,

9

and therefore, Plaintiff cannot show that the fact is genuinely disputed.  See Fed. R. Civ. P. 56(c)(1)(B).  Thus, to the extent that Plaintiff alleges that Woodhead and Bender violated his right to equal protection, Defendants are entitled to qualified immunity.

Moreover, to the extent that Plaintiff argues that Woodhead and Bender violated his Fourth Amendment rights because he was stopped and/or arrested without probable cause, the record demonstrates that Defendants Woodhead and Bender had reasonable justification for pursuing Plaintiff and signaling him to pull over.  Indeed, the record indicates that prior to starting their shift on January 31, 2007, Woodhead and Bender received information concerning a motor vehicle that was alleged to be involved in criminal activity.  In addition, the record demonstrates that  Plaintiff was driving a vehicle that was the same make and color as a vehicle involved in criminal activity to which the police had been alerted.  Finally, the record indicates that Plaintiff was observed committing motor vehicle infractions.  Indeed, during his deposition, Plaintiff admitted that he was exceeding the speed limit at the time of the incident; thus, he was committing a motor vehicle violation at the time he was signaled to pull over.  Wilson Cert, Ex. G., Pl's Dep. 62, 72.  Because the record is undisputed that Defendants Woodhead and Bender had probable cause to stop Plaintiff, Plaintiff has not demonstrated an issue of material fact concerning Defendants Woodhead and Bender's attempt to stop Plaintiff and the Court finds that Defendants Woodhead and Bender are entitled to a defense of qualified immunity.[2]

---

[2]Because the Court has determined that there is no issue of fact with regard to the first prong of the qualified immunity test, the Court need not consider the second prong.  See, e.g., Mierzwa v. United States, 282 Fed. Appx. 973, 979 (3d Cir. 2008)("Because the [plaintiffs] have failed to meet their burden of showing a genuine issue of material fact as to the first prong of the qualified immunity test we need not reach the second prong.").

b. Heck v. Humphrey

Next, Woodhead and Bender argue that Plaintiff's claims are barred by Heck v.

Humphrey, 512 U.S. 477.  In Heck, the Supreme Court held, inter alia, that in order for a plaintiff

to

> recover damages for allegedly unconstitutional conviction or imprisonment, or for
> other harm caused by actions whose unlawfulness would render a conviction or
> sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has
> been reversed on direct appeal, expunged by executive order, declared invalid by a
> state tribunal authorized to make such determination, or called into question by a
> federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for
> damages bearing that relationship to a conviction or sentence that has not been so
> invalidated is not cognizable under § 1983.

512 U.S. at 486-87.   Thus, the essential inquiry is whether the claims asserted by the plaintiff

would "necessarily imply the invalidity of his conviction."  Wallace v. Kato, 549 U.S. 384, 398

(2007) (Stevens, J., concurring) (quoting Heck, 512 U.S. at 486-87).  Further, a plaintiff

generally cannot maintain a § 1983 action unless the "termination of the prior criminal

proceeding [was resolved] in favor of the accused." Gilles v. Davis, 427 F.3d 197, 210 (3d

Cir.2005) (quoting Heck ).  Here, Defendants argue that because the undisputed facts

demonstrate that Plaintiff's failure to submit to a motor vehicle stop led to a state court

conviction for eluding arrest, Plaintiff is not entitled to recover under § 1983.  The Court agrees,

and insofar as Plaintiff asserts a claim under § 1983 for false arrest, the Court finds this claim is

barred by Heck.

Initially, the Court notes that it is undisputed that Plaintiff was convicted of second

degree eluding arrest in violation of N.J.S.A. 2C:29-2b which provides, in relevant part, "[a]ny

person, while operating a motor vehicle on any street or highway in this State . . ., who

knowingly flees or attempts to elude any police or law enforcement officer after having received

any signal from such officer to bring the vehicle or vessel to a full stop commits a crime of the

third degree; except that, a person is guilty of a crime of the second degree if the flight or attempt

to elude creates a risk of death or injury to any person." N.J.S.A. 2C:29-2b. Indeed, as discussed

above, despite Plaintiff's attempt to appeal his conviction, the New Jersey Appellate Division

upheld his conviction and sentence. State v. Hare, 2010 WL 2471737. Thus, Plaintiff has

presented nothing to this Court to demonstrate that his conviction or sentence has already been

invalidated.

Moreover, while the Third Circuit has made clear that "claims for false arrest . . .are not

the type of claims contemplated by the Court in Heck which necessarily implicate the validity of

a conviction or sentence," Montgomery v. De Simone, 159 F.3d 120, 126 n.5., here, where

Plaintiff was convicted of the very offense which precipitated the arrest, probable cause is

established by virtue of the conviction on that offense. Indeed, as the Third Circuit recognized

in Woodham v. Dubas, 256 Fed. Appx. 571, 576 (3d Cir. 2007), while a claim for false arrest

may, under certain circumstances, proceed in a § 1983 action despite a valid conviction, such

claim is barred by Heck where it would compromise the validity of the underlying state court

convictions.

Here, Plaintiff cannot prevail on his false arrest claim without impugning the validity of

his state court conviction for eluding arrest. Indeed, as discussed above, the record demonstrates

that Defendants Woodhead and Bender had reasonable justification for initially pursuing Plaintiff

and signaling him to pull over. See supra at 10. Moreover, Plaintiff testified that on February 1,

2007, at 1 a.m. he saw an unmarked police vehicle driving behind him flashing its lights,

12

signaling him to pull over.  Pl's Dep. 58-60.  However, Plaintiff further testified that he did not

pull over when signaled by the police because he "panicked" and feared for his safety.  Id. at 60-

63.  Indeed, Plaintiff testified that he did not pull over because the vehicle was an unmarked

police car and stated that he would have stopped if the car was a marked police car, but he would

not have stopped if the marked car was accompanied by an unmarked car.  Id. 66-69.  Despite

Plaintiff's alleged reasons for not pulling over, the undisputed facts demonstrate that Plaintiff

refused to pull over and this failure to pull over resulted in a car chase throughout Trenton and

Ewing that involved numerous police vehicles, both marked and unmarked, and that lasted

approximately 20 minutes.  Pl's Dep. 72-77, 203-204.  Thus, Plaintiff's admitted conduct in

refusing to pull over and leading the police on a car chase, provide the very conduct which gave

rise to Plaintiff's conviction for eluding arrest.  Plaintiff's assertions regarding his motivation for

failing to pull over do not negate the facts giving rise to his conviction.  Accordingly, Plaintiff's

false arrest claim is barred by the doctrine established in Heck and the Court will grant

Woodhead and Bender's motions for summary judgment and deny Plaintiff's Motion for

Summary Judgment.

### 2.    Defendant Reyes' Motion for Summary Judgment

In his Complaint, Plaintiff additionally alleges that Defendant Reyes violated his

constitutional rights by subjecting him to excessive force during the course of his arrest on

February 1, 2007.  In Reyes' motion for summary judgment, he argues that Plaintiff has not

raised a colorable claim under § 1983, that he is entitled to the defense of qualified immunity and

that the force used to arrest Plaintiff was objectively reasonable.  For the reasons below, the

Court denies Reyes' motion.

13

A claim of excessive force is analyzed under the Fourth Amendment's objective reasonableness standard. Graham v. Connor, 490 U.S. 386, 388 (1989).  The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons ... against unreasonable ... seizures." U.S. Const. amend. IV.  To prevail on their Fourth Amendment claim, Plaintiffs must show that a seizure occurred, and that it was unreasonable under the circumstances. Brower v. Cnty. of Inyo, 489 U.S. 593, 599, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989).

While the use of excessive force can indeed constitute an unlawful "seizure" under the Fourth Amendment, when construing an excessive force claim, this Court must consider whether the officer's use of force was objectively reasonable under the circumstances, regardless of the official's underlying motive or intentions.  See Graham v. Connor, 490 U.S. 386, 395-97 (1989). In Graham, the Supreme Court expounded on the reasonableness inquiry, stating that it "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396; see also Gilles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005) (quoting Kopec v. Tate, 361 F.3d 772, 777 (3d Cir.) (finding an officer entitled to qualified immunity on excessive force claim "'after resolving all factual disputes in favor of the plaintiff, [ ] the officer's use of force was objectively reasonable under the circumstances'"), cert. denied, 543 U.S. 956 (2004)).  In addition, the Third Circuit has noted other relevant factors including "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997)

(abrogated on other grounds by Curley v. Klem, 499 F.3d 199 (3d Cir. 2007)); see also Couden v.

Duffy, 446 F.3d 483, 496-97 (3d Cir. 2006).

When weighing these factors, courts should evaluate the officer's conduct from the

officer's vantage point at the time of the incident; thus the reasonableness of a particular use of

force

> must be judged from the perspective of a reasonable officer on the scene, rather
> than with the 20/20 vision of hindsight ... Not every push or shove, even if it may
> later seem unnecessary in the peace of a judge's chambers, violates the Fourth
> Amendment.  The calculus of reasonableness must embody allowance for the fact
> that police officers are often forced to make split-second judgments-in
> circumstances that are tense, uncertain, and rapidly evolving-about the amount of
> force that is necessary in a particular situation.

Graham, 490 U.S. at 396-97 (internal quotations and citations omitted).

The Court of Appeals for the Third Circuit recently examined the reasonableness of an

excessive force claim in the context of the use of deadly force.  See Lamont v. New Jersey, —

F.3d –, 2011 WL 753856 (3d Cir. Mar. 4, 2011).  In Lamont, the Court of Appeals noted that

"'[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a

reasonable officer on the scene'; Monday morning quarterbacking is not allowed."  Id. at *5

(quoting Graham, 490 U.S. at 396)(other citations omitted).  The Court of Appeals also agreed

with the plaintiff that the force used "became excessive as the events unfolded," finding that

"[e]ven where an officer is initially justified in using force, he may not continue to use such force

after it has become evident that the threat justifying the force has vanished."  Id. at *6 (citations

omitted).

In the instant matter, Plaintiff testified that when he eventually stopped his vehicle after a

20 minute car chase, he started running away from his car at a "medium" speed, with his hands in

the air.  Pl's Dep. 100-102.   Plaintiff eventually stopped, at which point, he turned and saw Officer Reyes running towards him with no weapon drawn.  Id.   Defendant Reyes tackled Plaintiff and brought him to the ground and Plaintiff landed half on his side.  Id. at 90, 91,105. Subsequently, Officer Reyes handcuffed Plaintiff and, according to Plaintiff, after Defendant Reyes put the right handcuff on him, but before his left hand was placed in cuffs, Officer Reyes hit him once in the face and approximately eight to ten times on his left torso.  Id. 106-109.  Once both his hands were cuffed, Plaintiff does not allege that he received any additional blows by Officer Reyes or any other officer.  Id. 110.  As a result of the force used, Plaintiff contends that he suffered  a cut about one half inch long above his left eye that did not require medical treatment or stitches and slight bruising on his left side.  Id. 112.

Initially, the Court notes that because the law in this district is clear that the force used may "become excessive as . . .events unfold," Lamont, 2011 WL 753856, at *6, this Court must consider the alleged force used by Officer Reyes in the context of the situation as it unfolded. Thus, insofar as Plaintiff may be alleging that Reyes used excessive force when he initially tackled him, the Court does not agree.  Indeed, the Court finds that based on Plaintiff's testimony, it is clear that Defendant Reyes' actions in running at and tackling Plaintiff were reasonable.  Specifically, Plaintiff testified that he had refused to pulled over when signaled and had led numerous police officers in a car chase; when Plaintiff finally pulled over and exited the vehicle, he ran away from Officer Reyes at a "medium" speed.   At that point, Officer Reyes did not know whether Plaintiff was armed or otherwise dangerous. Thus, the Court finds that Reyes' actions in running and tackling Plaintiff in order to arrest him were reasonable in light of the situation.

16

However, the Court must additionally consider whether Reyes used excessive force when he allegedly punched Plaintiff in the head and on the left side of his body.   Defendant Reyes contends that the force used was reasonable and, moreover, that any injuries Plaintiff sustained were de minimis.  Specifically, Reyes avers that because he "was confronted with an individual who had led the police on a long chase involving multiple vehicles, who then stopped his vehicle, exited, and did not go to his knees or lie face down on the ground, but instead ran from the vehicle [,] [c]ertainly, Officer Reyes is entitled to use force to effectuate the arrest of such an individual and the facts show that any injuries were at best minimal.  Those injuries provide objective proof as to whether the force used was reasonable and show that the force in this matter was only enough to effectuate the arrest.  There is no evidence of kicking or punching after the subject was in custody or of injuries that show that Plaintiff was beaten without justification. Instead, given what the officer was confronted with, any force was minimal and justified." Reyes Fact Statement at ¶ 11.  Thus, Reyes argues that summary judgment is warranted in his favor.

The Court finds, however, that based on the evidence in the record, there is an issue of fact as to the type of force used by Officer Reyes after the tackle, and, if Officer Reyes did punch Plaintiff in the face and the torso, whether such force was reasonable in the context of the situation.  Specifically, in contrast to Officer Reyes' statement that "there is no evidence of kicking or punching after the subject was in custody," Reyes Fact Statement at ¶ 11, Plaintiff testified that Officer Reyes punched him in the face and the side "[a]fter he cuffed [my] right hand."  Pl's Dep. 106:22-24.  Moreover, Plaintiff additionally testified that once he was tackled, he did not resist either the arrest or being handcuffed.   If, indeed, Plaintiff was not resisting

arrest, was in handcuffs, compliant and subdued, any punches or force at that time would not be reasonable.  See, e.g., Couden v. Duffy, 446 F.3d 483, 497 (3d Cir. 2006) (holding that "the participation of so many officers and the use of mace, several guns pointed at [plaintiff's] head, and handcuffs constituted excessive force against a cooperative and unarmed subject" where "[t]here was no evidence that [plaintiff] was resisting arrest or attempting to flee"); Sanders v. Workman, 2001 WL 656072, at * 2 (D. Del. March 26, 2001) (finding allegations sufficient to support claim of excessive force where plaintiff, who did not resist arrest, alleged officer handcuffed him then assaulted him by pushing, shoving, and pressing thumb into his head). Although Defendant Reyes disputes these facts and points to the surrounding circumstances of the arrest, it is clear from the law in this Circuit, see, e.g., Abraham v. Raso, 183 F.3d 279, 290 (3d Cir. 1999), that, at the very least, the facts in dispute must be determined by the testimony of the relevant actors at trial;  then the reasonableness of Defendant Reyes' conduct, after the tackle, must be determined by a jury.  Thus, the Court finds that summary judgment is not warranted on Plaintiff's excessive force claim against Officer Reyes in connection with the force allegedly applied after Plaintiff was tackled and handcuffed.

Moreover, the Court rejects Officer Reyes' argument that because Plaintiff's injuries were de minimis, the force used was reasonable.  Indeed, it is well-established that a de minimis injury may be sufficient to demonstrate an excessive force claim.  In Velius v. Township of Hamilton, the court considered whether a state actor's use of force which does not cause injury can violate the Fourth Amendment's prohibition of unreasonable seizures.  2010 WL 4975979 (D.N.J. Dec. 7, 2010).  There, the Honorable Joseph E. Irenas held that "a § 1983 plaintiff may suffer a *constitutional* injury (i.e., an infringement of his right to be free from an unreasonable seizure)

18

without suffering a *physical* injury." 2010 WL 4975979 at \*3 (D.N.J. Dec. 7, 2010)(emphasis in original).   Unlike in <u>Velius</u>, here, it is undisputed that Plaintiff suffered an actual injury during his arrest.  Thus, the Court is bound by the Supreme Court's decision in <u>Wilkins v. Gaddy</u>, which "specifically emphasized that the 'core judicial inquiry,' . . . is 'the nature of the force,' not 'the extent of the injury,'  explaining, '[i]njury and force ... are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.'" <u>Velius</u>, 2010 WL 4975979, at \*3 (citing <u>Wilkins</u>, 130 S. Ct. 1175, 1178-79 (2010)).   Indeed, because, as Judge Irenas explained,  "since at least 1997, the law with respect to Fourth Amendment excessive force claims has been clear: the presence or absence of a physical injury is but one relevant factor to consider in the Fourth Amendment excessive force analysis,"  <u>Id.</u> at \*4 (citing <u>Sharrar v. Felsin</u>, 128 F.3d 810 (3d Cir. 1997)), this Court will reject Reyes' argument concerning the <u>de minimis</u> nature of Plaintiff's injuries.

Because there is an issue of fact as to the extent of the force used by Officer Reyes after he tackled Plaintiff, and, moreover, whether this force was reasonable in light of the evolving situation, summary judgment is not warranted on Plaintiff's excessive force claim against Officer Reyes regarding the force used after Plaintiff was tackled and one handcuff applied.

## IV. CONCLUSION

For the foregoing reasons, Defendants Woodhead's and Bender's motions for summary judgment are GRANTED, Defendant Reyes' motion for summary judgment is DENIED as set forth herein and Plaintiff's motion for summary judgment is DENIED.

Dated: May 6, 2011                    /s/ Freda L. Wolfson
                                      Freda L. Wolfson, U.S.D.J.